FILED

February 26, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 7:30 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE BY INTERCHANGE

| | | |
|---|---|---|
| Tammy Napier, | ) | Docket No.: 2015-02-0263 |
|     Employee, | ) | |
| v. | ) | State File No.: 23500-2015 |
| | ) | |
| Volunteer Knit Apparel, Inc., | ) | |
|     Employer, | ) | |
| And | ) | Judge Robert Durham |
| | ) | |
| Nationwide, | ) | |
|     Insurance Carrier/TPA. | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing (REH) filed by the employee, Tammy Napier, on November 6, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Volunteer Knit Apparel, Inc., is obligated to provide medical benefits.

The dispositive issue is whether Ms. Napier sustained an injury to her left shoulder that primarily arose out of and in the course and scope of her employment with Volunteer.[1] The Court finds the evidence submitted by Ms. Napier is insufficient to establish she is likely to prevail at a hearing on the merits on the issue of causation with regard to her left shoulder condition.

### History of Claim

Ms. Napier is a forty-four-year-old resident of Claiborne County, Tennessee, who works as a sewer for Volunteer. (T.R. 1 at 1.) At the hearing, Ms. Napier testified she has worked for Volunteer for ten years, and for eight years prior to the alleged date of

---

[1] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

injury on March 17, 2015, she worked in the "cover taping" position. She testified her job paid on a "production" rate, meaning the more shirts she sewed in a given hour, the more money she would receive. Prior to March 17, she averaged twenty to twenty-two dozen shirts an hour.

Ms. Napier described her job duties in detail. She testified she would reach over her sewing machine with her left hand and take a shirt from a co-worker who had just sewn on the collar. She would then sew the left and right shoulder seams on the shirt. As she sewed, the shirts would be connected to each other at the seam. Once she reached seven shirts in a bundle, she would separate them by pulling each one toward her body with her left hand and cutting it apart from the bundle with her right. Once she had the shirts separated, she would toss the bundle of shirts with her left hand to the sleeve station, approximately an arm's length away. Volunteer did not contest Ms. Napier's description of her job duties.

Ms. Napier further testified her shoulder began hurting approximately three weeks before she reported her complaints to Volunteer on March 17. She stated her shoulder pain would subside at night and on the weekends, only to return after she worked for a half-hour, and that it intensified as the workday wore on.

On March 17, 2015, Ms. Napier reported a repetitive trauma injury causing pain in her neck and left shoulder, as well as numbness in her hands, to Volunteer. Volunteer initially accepted her claim as compensable and authorized medical treatment with Dr. Michael Howard, an orthopedist. (Ex. D at 1.) Dr. Howard first saw Ms. Napier on April 27. *Id.* She complained of left shoulder pain, and pain and numbness in both hands. *Id.* Dr. Howard noted Ms. Napier worked as a seamstress, and her symptoms "came on gradually." *Id.* She described her work activities as "sewing 22 dozen shirts/hour. There is repetitive in and out motion, and she throws t-shirts with the left shoulder." *Id.*

On examination, Dr. Howard noted "severe bicipital groove tenderness" in Ms. Napier's left shoulder, and tenderness along the postero-lateral aspect. (Ex. D at 2.) His exam of Ms. Napier's wrists revealed positive Phalen's sign and positive carpal compression tests in both wrists. *Id.* Dr. Howard diagnosed her with bilateral carpal tunnel syndrome and rotator cuff tendinopathy as well as biceps tendinitis in her left shoulder. (Ex. D at 2, 3.) He opined her work exacerbated her carpal tunnel syndrome and recommended splints and avoiding tasks involving fine dexterity. (Ex. D at 3, 5.)

With regard to Ms. Napier's left shoulder, Dr. Howard stated he "believe[d] this is likely caused by her work. The repetitive throwing of the garments has likely caused biceps irritation and some rotator cuff tendinopathy." *Id.* He gave her a subacromial injection and recommended physical therapy. *Id.*

The next medical record provided by the parties concerns a follow-up visit after right carpal tunnel surgery, dated June 5. (Ex. D at 4.) Ms. Napier reported improvement in her right-hand numbness following surgery. *Id.* Dr. Howard decided to wait two weeks before performing a carpal tunnel release on the left hand. *Id.*

Ms. Napier saw Dr. Howard again on June 22. (Ex. D at 5.) While her right-hand numbness and tenderness had improved, her left-shoulder complaints remained essentially the same. *Id.* She complained of "severe bicipital groove tenderness" as well as "tenderness along the postero-lateral aspect of the shoulder." *Id.* Ms. Napier stated she initially experienced "very good relief" of her shoulder pain following the original cortisone injection, but it had worn off. *Id.* In his treatment plan, Dr. Howard stated he believed Ms. Napier's left-shoulder condition "represents a repetitive overuse-type injury." (Ex. D at 6.) He injected her biceps tendon sheath and recommended additional physical therapy and work restrictions. *Id.*

On July 20, Ms. Napier returned to Dr. Howard. (Ex. D at 7.) She informed him the shoulder injection gave her complete relief for three days before the pain returned. *Id.* In his report, Dr. Howard noted:

> Regarding her left shoulder, despite some temporary improvement from cortisone injections she has had no sustained improvement. She described to me the onset of symptoms as being related to constantly reaching across her body and throwing the garments that she has just recently sewn into a bin. This type of repetitive motion does seem to be consistent with her MRI findings as well as a reasonable explanation for her symptoms.
>
> She has not had any sustained relief, and I believe arthroscopic surgery with decompression, biceps tenodesis, and possible distal clavicle excision could improve her symptomatology.

(Ex. D at 14.) Dr. Howard restricted Ms. Napier's left-shoulder use to no repetitive movement and a twenty-five-pound lifting limitation. (Ex. D at 17.)

On August 4, Volunteer denied Ms. Napier's claim for her left shoulder and filed a Notice of Denial on August 10 on the grounds that the shoulder "was not an accepted body part regarding this injury." (Ex. B.) A note from Dr. Howard, also dated August 10, indicates he scheduled a left carpal tunnel release for August 18. (Ex. D at 19.) He also continued Ms. Napier's left-shoulder restrictions. (Ex. D at 20.)

On August 28, Dr. Howard indicated on a "Work Status and Treatment Request Sheet" that Ms. Napier's "left shoulder proximal biceps tendinopathy, as per video[2] work

---

[2] Volunteer did not provide a copy of the video at the hearing.

description, unlikely work related (≤ 51%). As previously documented per pts description possibly work related." (Ex. C.)

Ms. Napier filed a Petition for Benefit Determination seeking medical benefits on August 12, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on October 12, 2015. Ms. Napier filed an REH on November 6, 2015, and the Court heard the matter on February 23, 2016.

At the Expedited Hearing, Ms. Napier asserted she sustained a job-related injury to her left shoulder, and that her uncontradicted testimony, in combination with Dr. Howard's opinion, is sufficient to establish she is likely to prevail at a hearing on the merits with regard to causation. Therefore, she is entitled to workers' compensation benefits for treatment of her left shoulder injury. Volunteer countered that, at best, Dr. Howard's most recent opinion regarding causation only establishes the possibility that Ms. Napier's left shoulder condition is causally related to her employment, and that is insufficient evidence pursuant to Tennessee Code Annotated section 50-6-102(14) (2015). As such, Volunteer argued the Court should deny Ms. Napier's request for left-shoulder treatment.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

4

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

On three occasions, April 27, 2015, June 8, 2015, and July 20, 2015, Dr. Howard, Ms. Napier's authorized treating physician and the only doctor offering an expert opinion in this matter, addressed causation regarding her left shoulder condition. (Ex. D.) Each time, he opined it was likely caused by a "repetitive overuse syndrome" consistent with her description of her job duties. *Id.* If the record only consisted of these medical opinions, particularly in light of Ms. Napier's uncontested description of her job duties, there would be sufficient evidence to establish Ms. Napier would be likely to succeed in establishing causation at a hearing on the merits. *See McCord, supra,* at *7.

However, Dr. Howard provided another opinion regarding causation on August 28, 2015. (Ex. C.) In this, his most recent opinion, he stated, "left shoulder proximal biceps tendinopathy, as per video work description, unlikely work related (≤ 51%). As previously documented per pts description possibly work related." *Id.* As argued by Ms. Napier's counsel, given that Volunteer did not produce the video referenced by Dr. Howard, or any evidence at all regarding Ms. Napier's job duties, the first sentence of Dr. Howard's opinion has little merit.

However, Dr. Howard went on to say that if Ms. Napier's job description was accurate, then her condition was *possibly* work related. *Id.* As stated earlier, a physician's opinion regarding causation must be more than "speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, Dr. Howard's conjecture, while it may have been sufficient under previous law when considered in conjunction with Ms. Napier's testimony, is no longer enough to establish causation. *See Boyd v. Revel Logging, LLC,* No. 2015-07-0053, 2015 TN Wrk. Comp. App. Bd., LEXIS 31, at *9 (Tenn. Workers' Comp. App. Bd. Sept. 22, 2015).

Of course, Dr. Howard previously recorded apparently different opinions wherein he stated Ms. Napier's shoulder condition was "consistent" with her job description and "likely" caused by her job activities. (Ex. D.) However, when explicitly asked to address causation, Dr. Howard only described Ms. Napier's condition as "possibly" being work-related. (Ex. C.) In this regard, this matter is similar to *Willis v. All Staff,* No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd., LEXIS 42, at *25, 26 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015.) In *Willis,* the Board of Workers' Compensation Appeals determined that, while the treating physician may have initially opined the injury was

5

"directly caused[d]" by a fall at work, his subsequent testimony that the fall "could have" contributed to the injury, or was a "possible" cause rendered his opinion insufficient to establish the employee would be likely to prevail at a hearing on the merits. *Id.*

Therefore, the Court finds the evidence presented by Ms. Napier with regard to the cause of her shoulder condition is insufficient to establish she is likely to prevail at a hearing on the merits on this issue. *McCord, supra,* at *7. As such, the Court denies her request for workers' compensation benefits regarding her left shoulder at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Ms. Napier's request for medical benefits for her left shoulder is denied.

3.  This matter is set for Initial Hearing on April 6, 2016, at 9:00 a.m. C.T., 10:00 a.m. E.T.

**ENTERED THIS THE 26ᵗʰ DAY OF FEBRUARY, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

7

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

A.    Affidavit of Tammy Napier;
B.    Notice of Denial of Claim for Compensation;
C.    Genex Work Status and Treatment Request Sheet; and,
D.    Medical Records of Dr. Michael Howard.

Technical Record:

1.    Petition for Benefit Determination;
2.    Dispute Certification Notice;
3.    Employee's Request for Expedited Hearing;
4.    Employer's Response to Request for Expedited Hearing;
5.    Transfer Order;
6.    Employee's Motion for Continuance;
7.    Order for Continuance; and,
8.    Pre-Hearing Order.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Medical Benefits was sent to the following recipients by the following methods of service on this the 26th day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Mark Lambert | | | X | MLambert@ForThePeople.com |
| Annette Kelley | | | X | akelley@carrallison.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9